IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JEROME ANDREW BURNETT,

    *Plaintiff,*

                      *        Case No. 1:23-cv-00376-JRR

v.                      *

ALDI, INC. MARYLAND,       *

    *Defendant.*           *

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## MEMORANDUM OPINION

*Pro Se* Plaintiff Jerome Andrew Burnett filed this action against Defendant Aldi, Inc. Maryland ("Aldi") alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.* ("Title VII"), the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12112, *et seq.*, and the Occupational Safety and Health Act ("OSHA"). Pending before the court is Defendant Aldi, Inc. Maryland's Motion to Dismiss. (ECF No. 20; "the Motion.") The court has reviewed all papers. No hearing is necessary. Local Rule 105.6 (D. Md. 2023). For the reasons that follow, by accompanying order, the Motion will be granted.

## I.    BACKGROUND[1]

On May 23, 2022, Plaintiff began working as a part-time stocker at Defendant Aldi. (ECF No. 1 at 1.) Plaintiff alleges that Defendant committed OSHA violations that placed his life at risk while working in confined spaces. *Id.* at 1. Plaintiff further alleges that Defendant "failed to

---

[1] For purposes of resolving the Motion, the court accepts as true all well-pleaded facts set forth in the Complaint. (ECF No. 1.) The court notes that Plaintiff filed a Complaint followed by a supplement, which the court construes as a supplement to the Complaint. (ECF No. 5.) Therefore, the court will consider the two together. *See Gray v. Wash. Metro Area Transit Auth.*, No. DKC-16-1792, 2017 U.S. Dist. LEXIS 18223, at *6 (D. Md. Feb. 8, 2017) (explaining that "*pro se* pleadings are liberally construed and held to a less stringent standard than pleadings drafted by lawyers").

follow safety rules and regulations for hiring an American with Disabilities." *Id.* Plaintiff further alleges he was promised 15 hours a week of work. *Id.* at 2.

On March 2, 2023, Plaintiff filed a supplement to his complaint. (ECF No. 5.) In his supplement, Plaintiff alleges that Defendant discriminated against him when it terminated his employment, failed to accommodate his alleged disabilities, subjected him to unequal terms and conditions of employment, and retaliated against him. *Id.* at 5. Plaintiff alleges that his disabilities are chronic pain, post-traumatic stress disorder ("PTSD"), and schizophrenia. *Id.*

On January 4, 2023, Plaintiff filed a Charge of Discrimination against Defendant with the Equal Employment Opportunity Commission ("EEOC") and the Maryland Commission for Civil Rights ("MCCR"). (ECF No. 5-1.) Plaintiff received a Right-to-Sue letter on February 7, 2023.[2] *Id.*

---

[2] In ruling on a motion to dismiss pursuant to Rule 12(b)(6), a court usually does not consider evidence outside of the complaint. "Under limited circumstances, when resolving a Rule 12(b)(6) motion, a court may consider exhibits, without converting the motion to dismiss to one for summary judgment." *Brennan v. Deluxe Corp.*, 361 F. Supp. 3d 494, 501 (D. Md. 2019) (citing *Goldfarb v. Mayor & City Council of Balt.*, 791 F.3d 500, 508 (4th Cir. 2015). In particular, a court may consider documents that are "attached to the complaint as exhibits," *Goines v. Valley Community Services Bd.*, 822 F.3d 159, 166 (4th Cir. 2016), and documents that are "integral to and explicitly relied on in the complaint." *Am. Chiropractic Ass'n, Inc. v. Trigon Healthcare Inc.*, 367 F.3d 212, 234 (4th Cir. 2004) (quoting Phillips v. LCI Int'l Inc., 190 F.3d 609, 618 (4th Cir. 1999)). "An integral document is a document that by its 'very existence, and not the mere information it contains, gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d. 602, 611 (D. Md. 2011) (quoting *Walker v. S.W.I.F.T. SCRL*, 517 F. Supp. 2d 801, 806 (E.D. Va. 2007)). "In addition to integral and authentic exhibits, on a 12(b)(6) motion the court 'may properly take judicial notice of matters of public record.'" *Id.* (quoting *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)). Specifically, the court may take judicial notice of publicly available information on state and federal government websites without converting the motion to one for summary judgment. *See U.S. v. Garcia*, 855 F.3d 615, 621 (4th Cir. 2017) ("This court and numerous others routinely take judicial notice of information contained on the state and federal government websites."). "In employment discrimination cases, courts often take judicial notice of EEOC charges and EEOC decisions." *Campbell v. Mayorkas*, 3:20-cv-697-MOC, 2021 WL 2210895, at *1 n.3 (W.D.N.C. July 1, 2021) (citing *Golden v. Mgmt. & Training Corp.*, 319 F. Supp. 3d 358, 366 n.2 (D.D.C. 2018)). Courts also routinely consider EEOC filings and records. *Dyer v. Md. State Bd. of Educ.*, 187 F. Supp. 3d at 608; *Whittington v. N.C. Dep't of Juv. Just. & Delinq. Prevention*, 2006 WL 909141, at *1 (W.D.N.C. Apr. 7, 2006).

Exhibit 1 of the Complaint is an EEOC Right-to-Sue letter (ECF No. 1-1) and Exhibit 1 of the Supplement is the Charge of Discrimination. (ECF No. 5-1.) Because Plaintiff's entitlement to sue arises from issuance of the EEOC letter and neither party makes an authenticity challenge, the court considers the exhibits without converting the Motion into one for summary judgment.

On February 9, 2023, Plaintiff filed a Complaint in this court. (ECF No. 1.) On March 2, 2023, Plaintiff filed a Supplement. (ECF No. 5; together referred to as the "Complaint"). Construed liberally, Plaintiff claims are as follows: (1) Violation of Title VII; (2) Violation of the ADA; (3) Violation of OSHA Rule #1910.37; and (4) fraudulent inducement. The prayer for relief seeks compensatory and punitive damages. (ECF No. 1 at 2.)

Defendant moves to dismiss on several grounds: (1) Plaintiff's Title VII and ADA failure-to-accommodate claims fail because Plaintiff did not exhaust his administrative remedies and the claims are now time-barred; (2) Plaintiff's Title VII and failure-to-accommodate claims fail because they do not meet the federal pleading standards; (3) Plaintiff's disability discrimination claim is not plausible; (4) Plaintiff's OSHA claim fails because there is no private right of action under the OSHA statute; and (5) Plaintiff fails to properly plead a claim for fraudulent inducement. (ECF No. 20-1 at p. 5-9.)

## II.     LEGAL STANDARD

### Federal Rule of Civil Procedure 12(b)(6)

A motion asserted under Rule 12(b)(6) "tests the legal sufficiency of a complaint." It does not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)). Accordingly, a "Rule 12(b)(6) motion should only be granted if, after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Edwards*, 178 F.3d at 244 (citing *Republican Party v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992)). The court, however, is ". . . not required to accept as true the legal conclusions set forth in a

plaintiff's complaint." *Edwards*, 178 F.3d at 244 (citing *District 26, United Mine Workers of Am., Inc. v. Wellmore Coal Corp.*, 609 F.2d 1083, 1085 (4th Cir. 1979)).

## III.   **ANALYSIS**

As an initial matter, the court is ever-mindful that "*pro se* pleadings are liberally construed and held to a less stringent standard than pleadings drafted by lawyers." *Gray v. Wash. Metro Area Transit Auth.*, No. DKC-16-1792, 2017 WL 511910, at *2 (D. Md. Feb. 8, 2017) (citing *Erickson v. Paradus*, 551 U.S. 89, 94 (2007)). "Liberal construction means that the court will read the pleadings to state a valid claim to the extent that it is possible to do so from the facts available; it does not mean that the court should rewrite the complaint to include claims never presented." *Id.*

### A.   **Title VII**

"Title VII forbids (i) employment practices that discriminate against an employee on the basis of race, color, religion, sex, or national origin, 42 U.S.C. § 2000e-2, and (ii) retaliation against an employee for opposing adverse actions that she reasonably suspects to be unlawful under Title VII, 42 U.S.C. § 2000e-3." *Strothers v. City of Laurel, Md.*, 895 F.3d 317, 326-27 (4th Cir. 2018); *see Roberts v. Glenn Indus. Group, Inc.*, 998 F.3d 111, 122 (4th Cir. 2021) (holding that "Title VII prohibits an employer from retaliating against an employee for complaining about prior discrimination."). "A plaintiff pursuing a claim under Title VII may either offer direct evidence of discrimination or, using indirect evidence, [he] may rely on the burden shifting framework that was adopted by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)." *Coleman v. Whitley*, No. 21-1181, 2022 WL 16630570, at *2 (4th Cir. Nov. 2, 2022). Pursuant to *McDonnell Douglas*, the plaintiff bears the initial burden of establishing by a

preponderance of the evidence a prima facie case of discrimination.  *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981).

### 1.    *Administrative Exhaustion*

Defendant argues that Plaintiff never filed an administrative charge alleging that Defendant discriminated against him in violation of Title VII, and therefore, Plaintiff's Title VII claim should be dismissed for failure to exhaust.  (ECF No. 20-1 at 6.)   The court agrees.

Title VII requires a plaintiff to exhaust administrative remedies prior to bringing suit in court.  *See Walton v. Harker*, 33 F.4th 165, 172 (4th Cir. 2022) (citing 42 U.S.C. § 2000e-5(b)) (explaining that "[i]t is well settled that before filing suit under Title VII or the ADEA, a plaintiff must exhaust her administrative remedies by bringing a charge with the EEOC").  Although the exhaustion requirement is not jurisdictional, "it is a necessary step in pursuing the claim in [c]ourt." *Jackson v. United States*, No. 8:22-cv-00772, 2022 WL 6754671, at *2 (D. Md. Oct. 11, 2022); *see Fort Bend Cnty., Tex. v. Davis*, 139 S. Ct. 1843, 1851 (2019) (holding that "Title VII's charge-filing requirement is not of jurisdictional cast").

An EEOC charge serves two important purposes: (1) "it notifies the charged party of the asserted violation" and (2) "it brings the charged party before the EEOC and permits effectuation of the [Civil Rights] Act's primary goal, the securing of voluntary compliance with the law." *Dickey v. Greene*, 710 F.2d 1003, 1005 (4th Cir. 1983), *rev'd on other grounds*, 729 F.2d 957 (4th Cir. 1984).  In *Balas v. Huntington Ingalls Indus., Inc.*, 711 F.3d 401 (4th Cir. 2013), the court clearly explained the EEOC process:

> An employee complaining of illegal discrimination must first contact the EEOC and present it with information supporting the allegations. After receiving an employee's intake questionnaire and any other information the employee has provided, the EEOC typically assists the employee with filing a charge. This assistance

> often includes drafting a charge—as it did here—and then asking
> the employee to sign it.
>
> The EEOC sends a notice and copy of the charge to the employer.
> This notice gives the employer the chance to voluntarily conduct its
> own investigation and attempt to resolve any discriminatory actions
> internally. Concurrently, the EEOC investigates the charge.
>
> The filing of a charge also "initiates agency-monitored settlement,
> the primary way that claims of discrimination are resolved." This
> procedure "reflects a congressional intent to use administrative
> conciliation as the primary means of handling claims, thereby
> encouraging quicker, less formal, and less expensive resolution of
> disputes." Prior to making any determination as to the merit of a
> charge, the EEOC may encourage and facilitate settlement between
> the parties.
>
> If the EEOC finds "reasonable cause to believe that the charge is
> true, the Commission shall endeavor to eliminate any such alleged
> unlawful employment practice by informal methods of conference,
> conciliation, and persuasion." If the EEOC cannot reach a voluntary
> settlement with the employer, the agency may file a lawsuit or issue
> a Notice–of–Right–to–Sue to the employee. If the EEOC does not
> make a reasonable cause determination or the employee requests a
> right to sue, the agency may issue one, thus allowing the employee
> to file suit.

*Id.* at 407 (internal citations omitted).  The exhaustion requirement, therefore, is not "simply a

formality to be rushed through so that an individual can quickly file his subsequent lawsuit."

*Chacko v. Patuxent Inst.*, 429 F.3d 505, 510 (4th Cir. 2005).  It "serves a vital function in the

process of remedying an unlawful employment practice."  *Balas*, 711 F.3d at 407.

Generally, "a plaintiff fails to exhaust [her] administrative remedies where . . . [her]

administrative charges reference different time frames, actors, and discriminatory conduct than the

central factual allegations in his formal suit."  *Chacko*, 429 F.3d at 506.  In *Walton v. Harker*, 33

F.4th 165 (4th Cir. 2022), the Fourth Circuit succinctly explained:

> A plaintiff's EEOC charge defines the scope of her subsequent right
> to institute a civil suit. The allegations contained in the
> administrative charge of discrimination generally limit the scope of

any subsequent judicial complaint. [F]actual allegations made in formal litigation must correspond to those set forth in the administrative charge.  Only those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII [or ADEA] lawsuit.

*Id.* at 172.  Further, "[t]he Fourth Circuit has held that claims of retaliation for actions that follow the filing of an EEOC charge are reasonably related to the original complaint and thus may be raised for the first time in court." *Cherry v. Bealefeld*, No. CCB-08-1228, 2010 WL 917421, at *6 (D. Md. Mar. 9, 2010).  With this in mind, the court also recognizes that "EEOC charges often are not completed by lawyers and as such 'must be construed with utmost liberality.'" *Balas*, 711 F.3d at 408 (quoting *Alvarado v. Bd. of Trs. of Montgomery Cmty. Coll.*, 848 F.2d 457, 460 (4th Cir. 1988).  The court, however, is not "at liberty to read into administrative charges allegations they do not contain." *Id.*

Plaintiff attaches to his Complaint a Right-to-Sue letter dated February 7, 2023.  (ECF Nos. 1-1; 5-1.)  While the Right-to-Sue letter refers to the Equal Pay Act (ECF No. 1-1), in his charge of discrimination, Plaintiff states that he was discriminated against based on a protected disability in violation of the ADA and that he was retaliated against for complaining of workplace safety violations.  (ECF No. 5-1 at 3.)  Specifically, Plaintiff authored the following statement:

Respondent hired me in or around May 2022 as a stocker.  I am protectected [sic] by Americans with Disabilities Act (ADA), I am disabled of which the respondent was aware.  The respondent violated Occupation Safety and Health Administration (OSHA) and Maryland Occupational Safety and Health (MOSH) rules and regulations [1910.37/1910.37(a)(3)/1910.37(d)(3)].  The violations were committed when the store was closed and open.  The violations to MOSH and OSHA rules are also violations of Title III of the ADA.  I have provided photographic evidence of some of the violations committed by the respondent.  I believe the Respondent discharged me for my disability and in retaliation for my complaints

7

of safety violations and violation to my rights to Title III of ADA of
1990, as amended.

(ECF No. 5-1 at 3.)

There are no allegations contained within Plaintiff's EEOC charge of discrimination
pertaining to alleged Title VII discrimination; nor does the EEOC charge allege discrimination
based on a status protected by Title VII.   Therefore, Plaintiff has failed to exhaust his
administrative remedies as to his Title VII claim.   *See Chacko*, 429 F.3d at 506 (noting that "a
plaintiff fails to exhaust [her] administrative remedies where . . . [his] administrative charges
reference different . . . discriminatory conduct than the central factual allegations in his formal
suit").   Accordingly, the Motion will be granted as to Plaintiff's Title VII claim for failure to
exhaust.[3]  While this alone warrants dismissal of Plaintiff's Title VII claim, the court will address
Defendant's remaining argument.

## 2.    *Title VII Employment Discrimination*

Liberally construing Plaintiff's Amended Complaint, Plaintiff alleges three forms of
discrimination under Title VII: (1) termination of employment; (2) unequal terms and conditions
of his employment; and (3) retaliation.  (ECF No. 5 at 5.)  Defendant argues that even if Plaintiff
fully exhausted his administrative remedies, the Title VII claim fails because Plaintiff neither
alleges a protected category nor alleges that a protected activity played a part in his termination.
(ECF No. 20-1 at 7.)

---

[3] Defendant additionally argues that because 300 days have passed, Plaintiff cannot file a timely EEOC charge relating
to the alleged Title VII-based discrimination.  (ECF No. 20-1 at 7.)  "In Maryland, a charging party must file an EEOC
Charge within 300 days of the alleged unlawful employment practice."  *Van Slyke v. Northrop Grumman Corp.*, 115
F. Supp. 2d 587, 592 (D. Md. 2000), *aff'd*, 17 Fed. Appx. 154 (4th Cir. 2001) (citing 42 U.S.C. § 2000e–5(e)(1)).  In
his charge, Plaintiff alleges that the unlawful conduct occurred between "June 6, 2022 and July 7, 2022."  (ECF No.
5-1.)  Thus, Plaintiff must have filed an EEOC charge as to his Title VII claim by May 2, 2023.  Because Plaintiff has
not done so, Plaintiff's Title VII claim is also time-barred.

At the motion to dismiss stage, "[i]t has long been the rule that 'an employment discrimination plaintiff need not plead a prima facie case of discrimination under the evidentiary framework set forth in *McDonnell Douglas Corp.*" *Holloway v. Md.*, 32 F.4th 293, 298 (4th Cir. 1973). "Instead, a Title VII plaintiff is 'required to allege facts to satisfy the elements of a cause of action created by that statute.'" *Bing v. Brivo Systems, LLC*, 959 F.3d 605, 616 (4th Cir. 2020) (quoting *McCleary-Evans v. Md. Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 585 (4th Cir. 2015)).

"In employment discrimination cases, a plaintiff must plead that (1) her employer took an adverse employment action against her, (2) because of her protected status." *Brooks v. United Parcel Service, Inc.*, No. DKC 20-2617, 2021 WL 4339194, at *12; *see McCleary-Evans*, 780 F.3d at 585 (explaining that the plaintiff is "required to allege facts to satisfy the elements of a cause of action created by that statute"). "[A] complaint must contain '[f]actual allegations [sufficient] to raise a right to relief above the speculative level.'" *McCleary-Evans*, 780 F.3d at 585 (quoting *Twombly*, 550 U.S. at 555). "To allege that an employer acted because of an employee's protected status, there must be some connective thread between the alleged mistreatment and the protected status." *Brooks*, 2021 WL 4339194, at *12 (internal quotation marks omitted).

The Complaint does not allege any facts to support a reasonable inference of bias or discriminatory animus against Plaintiff based on a protected status; nor does Plaintiff suggest or allege a neutral workplace policy that disproportionately adversely impacts him due to his protected status. Indeed, Plaintiff does not suggest or expressly allege he was discriminated against on the basis of race, color, religion, sex, or national origin. *See Strothers v. City of Laurel, Md.*, 895 F.3d 317, 326-27 (4th Cir. 2018) ("Title VII forbids (i) employment practices that discriminate against an employee on the basis of race, color, religion, sex, or national origin, 42

U.S.C. § 2000e-2, and (ii) retaliation against an employee for opposing adverse actions that she reasonably suspects to be unlawful under Title VII, 42 U.S.C. § 2000e-3.").  Accordingly, because there are no allegations that Defendant took an adverse action based on Plaintiff's protected status, Plaintiff cannot maintain a Title VII claim against Defendant for discrimination based on termination of employment and/or unequal terms and conditions of his employment.

To the extent Plaintiff maintains that Defendant violated Title VII by retaliating against him, he fails to state a claim.  To state a claim for retaliation, a plaintiff must allege that (1) he engaged in a protected activity; (2) his employer took an adverse employment action against him; and (3) a causal link exists between the protected activity and the adverse employment action. *Roberts v. Glenn Indus. Grp., Inc.*, 998 F.3d 111, 122 (4th Cir. 2021).   "Protected activity under Title VII includes complaints of discrimination based upon 'race, color, religion, sex or national origin.'"  *Landino v. Sapp*, 520 Fed. Appx. 195, 198 (4th Cir. 2013) (quoting *Balazs v. Liebenthal*, 32 F.3d 151, 159 (4th Cir. 1994)).  It "includes an employee's opposition to what he or she believes is an unlawful employment practice."  *Bowman v. Balt. City Bd. of School Commissioners*, 173 F. Supp 3d 242, 248 (D. Md. 2016).   Plaintiff does not allege that he engaged in protected activity or that he opposed any action by Defendant that he believed was unlawful under Title VII.[4]

Accordingly, to the extent Plaintiff alleges that Defendant discriminated against him by terminating his employment, unequal terms and conditions of employment, and retaliation, he fails

---

[4] To the extent Plaintiff alleges an ADA retaliation claim, the claim suffers the same fate as Plaintiff's Title VII retaliation claim. *See Parker v. Children's Nat'l Med. Ctr.*, Inc., No. CV ELH-20-3523, 2021 WL 5840949 , at *24 (D. Md. Dec. 9, 2021) ("Courts typically apply the standards for Title VII retaliation claims to ADA retaliation claims.") (citing *Laird v. Fairfax Cty.*, 978 F.3d 887, 893 n.5 (4th Cir. 2020)).  Plaintiff fails to allege that he engaged in a protected activity.  While request for accommodation is a protected activity, *Parker*, 2021 WL 5840949, at *24), Plaintiff does not allege he made any such request.  Therefore, to the extent Plaintiff seeks to state an ADA retaliation claim, he fails to do so. *Rhoads v. F.D.I.C.*, 257 F.3d 373, 391 (4th Cir. 2001) (noting the factors for a *prima facie* case of retaliation are: (1) Plaintiff engaged in a protected activity; (2) Plaintiff's employer acted adversely against him; and (3) the protected activity was causally connected to the employer's adverse action).

to allege the barest of requisite facts to support a Title VII discrimination claim.  The Motion will be granted as to Plaintiff's Title VII claim.

### B.     ADA[5]

Defendant argues that Plaintiff's failure-to-accommodate ADA claim is subject to dismissal because Plaintiff failed to exhaust his administrative remedies, and, even if Plaintiff exhausted his administrative remedies, Plaintiff fails to state a claim.  (ECF No. 20-1 at 5, 7.) Defendant further argues that Plaintiff's wrongful discharge claim under the ADA fails because the factual allegations contained in the Complaint do not suggest that Plaintiff experienced discrimination based on disability.  (ECF No. 20-1 at 8.)

"The ADA makes it unlawful for covered employers to 'discriminate against a qualified individual on the basis of disability.'" *Summers v. Altarum Inst., Corp.*, 740 F.3d 325, 328 (4th Cir. 2014) (quoting 42 U.S.C. § 12112(a) (2012)). "The Act prohibits covered employers from discharging qualified employees because they are disabled." *Id.*   And, "[s]uch unlawful discrimination can include the failure to make 'reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee . . . .'"  *Wilson v. Dollar Gen. Corp.*, 717 F.3d 337, 344 (4th Cir. 2013) (quoting 42 U.S.C. § 12112 (b)(5)(A))

---

[5] The court notes that Plaintiff alleges violation of Titles I, III, and V of the ADA.  (ECF No. 5 at 4.)  "[T]he ADA forbids discrimination against disabled individuals in major areas of public life, among them employment (Title I of the Act), public services (Title II), and public accommodations (Title III)."  *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 675-76 (2001).  Because Plaintiff alleges Defendant discriminated against him during employment, the court construes Plaintiff to bring a claim pursuant to Title I of the ADA, not Title III.  Additionally, Title V states, in part: "No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a).  Stated differently, Title V protects individuals who are retaliated against for exercising their rights under Title I of the ADA.  However, "a Title V claim must be predicated on another section of the ADA."  *Adeyemi v. Dep't of Pub. Safety & Corr. Servs.*, No. CV ELH-19-3207, 2021 WL 1785141, at *4 (D. Md. May 5, 2021).  In the instant case, Plaintiff's ADA retaliation claim is predicated on Title I because Plaintiff alleges that he was retaliated against for complaining about employment violations.

###### 1.      *Administrative Exhaustion*

Like Title VII, the ADA requires a plaintiff to exhaust administrative remedies prior to bringing suit in court.  *See Sydnor v. Fairfax Cnty., Va.*, 681 F.3d 591, 593 (4th Cir. 2012) (holding ADA incorporates Title VII's enforcement procedures, including the administrative exhaustion requirement); *Nelson v. Emergent BioSolutions Inc.*, DLB-20-3541, 2022 WL 991395, at *4 (D. Md. Mar. 31, 2022) (observing that the Fourth Circuit has held that "the ADA incorporates Title VII's enforcement procedures, including the administrative exhaustion requirement").

As stated above, "a plaintiff fails to exhaust his administrative remedies where . . . his administrative charges reference different time frames, actors, and discriminatory conduct than the central factual allegations in his formal suit." *Chacko v. Patuxent Institution*, 429 F.3d 505, 506 (4th Cir. 2005).  In *Walton v. Harker*, 33 F.4th 165 (4th Cir. 2022), the Fourth Circuit succinctly explained:

> A plaintiff's EEOC charge defines the scope of her subsequent right to institute a civil suit. The allegations contained in the administrative charge of discrimination generally limit the scope of any subsequent judicial complaint. [F]actual allegations made in formal litigation must correspond to those set forth in the administrative charge.  Only those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII [or ADEA] lawsuit.

*Id.* at 172.  With this in mind, the court also recognizes that "EEOC charges often are not completed by lawyers and as such 'must be construed with utmost liberality.'"  *Balas*, 711 F.3d at 408 (quoting *Alvarado v. Bd. of Trs. of Montgomery Cmty. Coll.*, 848 F.2d 457, 460 (4th Cir. 1988). The court, however, is not "at liberty to read into administrative charges allegations they do not contain." *Id.*

The court finds *Johnson v. SecTek, Inc.,* instructive.  No. CIV.A. ELH-13-3798, 2015 WL 502963 (D. Md. Feb. 4, 2015).  There, the plaintiff sought to amend her complaint to allege that the defendant violated the ADA by failing to grant her request for reasonable accommodation of her disability.  *Id.* at *3.  The defendant argued that the plaintiff failed to exhaust her administrative remedies, and, therefore, any amendment to include an ADA failure to accommodate claim would be futile.  *Id.* at *6.  The court concluded that the plaintiff failed to exhaust the failure to accommodate claim and any amendment to the complaint would be futile.  *Id.* at *7.  In doing so, the *Johnson* court succinctly explained:

> The Fourth Circuit has found that the plaintiffs failed to exhaust where the complaint alleged a violation on a forbidden basis (i.e., race or sex) not alleged in any EEOC Charge, and where the complaint alleged a kind of liability not alleged in any EEOC Charge. *See Bryant v. Bell Atl. Md., Inc.*, 288 F.3d 124, 132–33 (4th Cir. 2002) (plaintiff failed to exhaust claim for sex discrimination because EEOC Charge alleged only racial discrimination); *Jones v. Calvert Grp., Ltd.*, 551 F.3d 297, 301 (4th Cir. 2009) (plaintiff failed to exhaust claim for racial discrimination because EEOC Charge alleged only retaliation).

> On the other hand, where allegations in the complaint match the discriminatory bases and kinds of liability alleged in an EEOC Charge, the Court has found that the plaintiffs did exhaust claims for related conduct or requests that were not included in the EEOC Charge. In *Chisholm v. United States Postal Services*, 665 F.2d 482, 491 (4th Cir. 1981), for example, the Court "found exhaustion where both the administrative complaint and formal litigation concerned 'discriminat[ion] in promotion' but involved different aspects of the 'promotional system.'" *Sydnor*, 681 F.3d at 594 (quoting *Chisholm*, 665 F.2d at 491). Similarly, in *Smith*, 202 F.3d at 248, the Court found exhaustion "where both the EEOC charge and the complaint included claims of retaliation by the same actor, but involved different retaliatory conduct." *Sydnor*, 681 F.3d at 594. And, in *Sydnor*, 681 F.3d at 594–95, the Court held that plaintiff had exhausted her claim for a particular kind of accommodation under the ADA, even though her EEOC Charge did not mention that she had requested that particular kind of accommodation. The Court reasoned that Sydnor's EEOC Charge "claimed what her suit now claims—that she had 'been discriminated against based on [her]

disability' by being 'denied a reasonable accommodation;' " that the allegations in both "involved the same place of work and the same actor;" and that both "focused on the same type of discrimination," *i.e.*, "that she 'was denied a reasonable accommodation.'" *Id.* (quoting record) (alterations in *Sydnor*). It concluded: "When taken together, the similarities between Sydnor's administrative and judicial narratives make clear that the [defendant] was afforded ample notice of the allegations against it." *Id.* at 595.

Here, plaintiff's EEOC Charge contains no express reference to a claim of failure to accommodate, nor does it allege that plaintiff ever requested any kind of accommodation. ECF 8–3 (EEOC Charge). In full, the narrative part of the Charge states, *id.* at 2:

> I was hired on April 4, 2006, as an Armed Security officer for Sectek Inc. On February 14, 2012, I was reprimanded by a representative from Sectek Inc's [sic] corporate office for being asleep on the job. I told the representative that I was on medication that made me drowsy. On February 18, 2012, I received a phone call from my supervisor, Tony Smith, informing me that I had been discharged.
>
> I believe that I have been discriminated against (discharged), based upon my disability, in violation of the Americans with Disabilities Act of 1990, as amended.
>
> …

In her EEOC Charge, plaintiff alleged that SecTek unlawfully discriminated on the basis of plaintiff's disability when it discharged her. ECF 8–3. Plaintiff now seeks to add a claim with the same basis of discrimination as that alleged in her EEOC Charge (disability), but with a new form of discrimination (failure to accommodate), not alleged in her EEOC Charge. Moreover, so far as the Court can tell, this claim may involve different actors and different timeframes than those referenced in plaintiff's EEOC Charge. Indeed, in light of the Court's continued inability to make out the factual basis of plaintiff's failure to accommodate claim, it seems highly unlikely that the defendant "was afforded ample notice of the allegations against it" on this point, in any forum. *See Sydnor*, 681 F.3d at 595.

My conclusion is buttressed by similar holdings by fellow judges in this District, and by the similar holdings of other circuit courts of appeal. *See, e.g., Bennett v. Kaiser Permanente*, 931 F.Supp.2d 697, 704 (D. Md. 2013) (holding failure to accommodate charge was not reasonably related to EEOC charges where EEOC charge said, "I believe I have been discriminated against . . . with regard to

discipline and discharge based on my . . . disability") (alterations in *Bennett*); *Mayers v. Washington Adventist Hosp.*, 131 F.Supp.2d 743, 747 (D. Md.), *aff'd*, 22 F. App'x 158 (4th Cir. 2001); *see also Jones v. U.P.S., Inc.*, 502 F.3d 1176, 1187 (10th Cir. 2007) (internal citations omitted) ("[T]he text of the charge does not contain facts that would prompt an investigation of Mr. Jones's claim that UPS failed to accommodate him. Indeed, facts related to the alleged act of discrimination—UPS's failure to consider accommodating his perceived disability—are absent from the charge. Because an investigation into whether UPS failed to accommodate Mr. Jones cannot 'reasonably be expected to follow the charge,' he has failed to exhaust his administrative remedies with respect to this claim."); *Jones v. Sumser Ret. Vill.*, 209 F.3d 851, 853 (6th Cir. 2000) ("Jones's February 28, 1994, charge did not explicitly allege that Sumser failed to accommodate her disability. Furthermore, such a claim does not reasonably grow out of the facts and claims she asserted. The written charge specifically alleged only a termination claim. Nothing in the charge pointed to any claim other than an improper refusal to keep Jones's job open while she recovered . . . . A termination claim differs in kind and date from an accommodation claim.").

2015 WL 502963, at *5-7.

Defendant argues that Plaintiff never filed an administrative charge alleging that Defendant denied an accommodation request of any kind.  (ECF No. 20-1 at 6.)  Plaintiff attaches to his Complaint a Right-to-Sue letter dated February 7, 2023.  (ECF Nos. 1-1; 5-1.)  The Right-to-Sue letter references the Equal Pay Act.  (ECF No. 1-1.)  In his charge of discrimination, Plaintiff states that he was "discriminated against" "based on" "retaliation," "disability," and "Title III" of the ADA.  (ECF No. 5-1 at 3.)  Specifically, Plaintiff stated the following:

> Respondent hired me in or around May 2022 as a stocker.  I am protectected [sic] by Americans with Disabilities Act (ADA), I am disabled of which the respondent was aware.  The respondent violated Occupation Safety and Health Administration (OSHA) and Maryland Occupational Safety and Health (MOSH) rules and regulations [1910.37/1910.37(a)(3)/1910.37(d)(3)].  The violations were committed when the store was closed and open.  The violations to MOSH and OSHA rules are also violations of Title III of the ADA.  I have provided photographic evidence of some of the violations committed by the respondent.  I believe the Respondent

15

discharged me for my disability and in retaliation for my complaints
of safety violations and violation to my rights to Title III of ADA of
1990, as amended.

(ECF No. 5-1 at 3.)

Like *Johnson*, Plaintiff alleges that Defendant unlawfully discriminated against him on the

basis of his disability by terminating his employment, and by retaliating against him for his safety-

related complaints and complaints of ADA violations.  It is unclear what facts form the basis for

Plaintiff's failure to accommodate claim and Plaintiff does not allege that he requested any form

of accommodation.  Therefore, "it seems highly unlikely that the defendant 'was afforded ample

notice of the allegations against it' on this point, in any forum."  *See Johnson and Sydnor, supra.*

681 F.3d at 595.  Accordingly, Plaintiff has failed to exhaust the failure to accommodate claim and

the Motion will be granted.[6]  For purposes of completeness, the court will address Defendant's

remaining argument.

### 2.    *Failure to Accommodate*

Defendant argues that even if Plaintiff exhausted his administrative remedies, Plaintiff's

failure to accommodate claim fails to meet the pleading standards.  (ECF No. 20-1 at 7.)

"To state a claim for failure to accommodate under the ADA, Plaintiff must allege '(1) that

he was an individual who had a disability within the meaning of the statute; (2) that the [employer]

had notice of his disability; (3) that with reasonable accommodation he could perform the essential

functions of the position . . .; and (4) that the [employer] refused to make such accommodations.'"

---

[6] Like the Title VII claim, Defendant argues that because 300 days have passed and Plaintiff did not file an ADA failure-to-accommodate claim, the claim is time-barred.  "In Maryland, a charging party must file an EEOC Charge within 300 days of the alleged unlawful employment practice." *Van Slyke v. Northrop Grumman Corp.*, 115 F. Supp. 2d 587, 592 (D. Md. 2000), *aff'd*, 17 Fed. Appx. 154 (4th Cir. 2001) (citing 42 U.S.C. § 2000e–5(e)(1)).  In his charge, Plaintiff alleges that the unlawful conduct occurred between "June 6, 2022 and July 7, 2022."  (ECF No. 5-1.)  Thus, Plaintiff must have filed an EEOC charge as to his ADA failure-to-accommodate claim by May 2, 2023.  Because Plaintiff has not done so, this claim is also time-barred.

*Wilson v. City of Gaithersburg*, 121 F. Supp. 3d 478, 484 (D. Md. 2015) (quoting *Rhoads v. F.D.I.C.*, 257 F.3d 373, 387 n.11 (4th Cir. 2001)).

In the instant case, Plaintiff provides only that his disability is "chronic pain/PTSD/schizophrenia." (ECF No. 5 at 5.) Plaintiff fails to allege that Defendant had notice of his disability, that he could perform the job with (or without) reasonable accommodation, that he requested and was refused a reasonable accommodation, or that Defendant failed to engage in an interactive process regarding a reasonable accommodation suitable to meet his need, if any. The Motion will be granted as to Plaintiff's failure-to-accommodate claim.

### 3. *Wrongful Discharge*

Under the ADA, the elements of a wrongful discharge claim are "(1) [the plaintiff] was a 'qualified individual with a disability'; (2) []he was discharged; (3) []he was fulfilling [his] employer's legitimate expectations at the time of discharge; and (4) the circumstances of [his] discharge raise a reasonable inference of unlawful discrimination." *Rohan v. Networks Presentations LLC*, 375 F.3d 266, 273 n.9 (4th Cir. 2004) (quoting *Haulbrook v. Michelin N. Am., Inc.*, 252 F.3d 696, 702 (4th Cir. 2001)).

In *Wilson v. Montgomery County Board of Trustees*, the court dismissed the plaintiff's wrongful discharge disability discrimination claim, explaining that:

> Although she is not required to plead precise details about those functions, she must do more than parrot the elements of a wrongful discharge claim. She must provide some basis for the Court to determine whether she was meeting her employer's performance expectations for her particular job at the time she was discharged. With no information at all about what her position entailed or her work performance, it is not possible to determine whether she has stated a plausible claim for wrongful discharge. Because Wilson does not provide "even a cursory description of what kind of work [she performed or was expected to perform], she has simply recited the elements of the cause of action." *Rubino v. New Acton Mobile Indus., LLC*, 44 F. Supp. 3d 616, 623 (D. Md. 2014). Indeed, while

she claims that she was "able" to perform the functions of her position (and argues that this is enough for an inference that she was performing her essential work functions, Pl.'s Opp'n 9), she has not even alleged that she was performing those functions and fulfilling her employer's expectations. To the contrary, her one allegation with regard to her actual performance is that she "received a harshly critical performance review for Fiscal Year 2015 after June 30, 2015, from Defendant, prepared by Dorothy Umans, Plaintiff's Manager." Third Am. Compl. 23. Even if her use of the word "harshly" suggests that she disagrees with the extent of the negativity of the performance review, as Wilson argues, Pl.'s Opp'n 9, she still has not alleged that her work performance was sufficient to meet her employer's expectations. Thus, her threadbare allegations do not satisfy *Iqbal* and *Twombly*. *See Young v. Giant Food Stores, LLC*, 108 F. Supp. 3d 301, 318 (D. Md. 2015) (dismissing ADA wrongful discharge claim where plaintiff did "not provide[ ] any meaningful information about the essential functions of her job"); *Rubino*, 44 F. Supp. 3d at 623–24 (dismissing case where plaintiff "makes no allegation whatsoever about his job performance or whether [his employer] considered him a satisfactory employee"); *see also Bock v. Florists' Transworld Delivery, Inc.*, No. WDQ-12-3702, 2013 WL 5276551, at *6 & n.23 (D. Md. Sept. 16, 2013) (concluding that plaintiff "pled facts supporting his allegation that he met FTD's legitimate expectations" where he "alleged that he 'continued to perform his duties in a satisfactory manner' despite the increase in his travel time" and "also alleged that he increased his sales to 121 percent of his sales quota and was ranked 5th in the sales department the day before he was terminated"; noting that in *Bailey v. AmeriGas Propane, Inc.*, No. WDQ-11-1701, 2012 WL 346632, at *4 (D. Md. Jan. 31, 2012), "plaintiff sufficiently pled he met employer's legitimate expectations by alleging he received positive performance evaluations," whereas in *Brandford v. Shannon–Baum Signs, Inc.*, No. RDB-11-836, 2012 WL 3542604, at *4 (D. Md. Aug. 1, 2012), the Court dismissed the wrongful discharge "claim when complaint contained only threadbare allegations unsupported by factual content that he met legitimate expectations," and in *Munoz v. Baltimore County, Md.*, No. RDB-11-2693, 2012 WL 3038602, at *8 (D. Md. July 25, 2012), "plaintiff did not sufficiently allege meeting legitimate expectations when he only addressed his performance of essential job functions and did not argue he met employer's expectations").

No. PWG-17-2784, 2018 WL 4300498 at *6 (D. Md. 2018).

Here, Plaintiff fails to allege facts sufficient to meet the elements of a wrongful discharge

claim.  *See Wilson*, *supra.* (explaining that "[w]ith no information at all about what her position entailed or her work performance, it is not possible to determine whether she has stated a plausible claim for wrongful discharge").  The Motion will be granted as to Plaintiff's ADA wrongful discharge claim.

      **C.**    **<u>OSHA</u>**

      Plaintiff alleges that Defendant failed to adhere to OSHA rules and regulations.  (ECF No. 1 at 1.)  Defendant argues that Plaintiff's OSHA claim fails as a matter of law because there is no private right of action under this statute.  (ECF No. 20-1 at 9.)

      Under OSHA, "[e]ach employer [ ] shall furnish to each of his employees employment and a place of employment which are free from recognized hazards that are causing or are likely to cause death or serious physical harm to his employees; [and] (2) shall comply with occupational safety and health standards promulgated under this chapter."  29 U.S.C. § 654(a).  "OSHA also prohibits retaliation against employees who exercise their rights under this statute."  *Carter v. GardaWorld Sec. Servs.*, No. CV JKB-20-3700, 2021 WL 2018636, at *5 (D. Md. May 20, 2021); *see* 29 U.S.C. § 660(c)(1) ("No person shall discharge or in any manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this Act.").

      Courts routinely conclude that "[t]he OSHA statute does not create a private right of action, meaning that a private citizen cannot sue for an OSHA violation even where he is injured."  *Changamire v. Baltimore City Bd. of Sch. Commissioners*, No. CV SAG-23-1546, 2023 WL 5984016 , at *3 (D. Md. Sept. 14, 2023); *see* 29 U.S.C. § 660(c)(2) ("Any employee who believes that he has been discharged or otherwise discriminated against by any person in violation of this subsection may . . . file a complaint with the Secretary alleging such discrimination. Upon receipt

of such complaint, the Secretary shall cause such investigation to be made . . . . If upon such investigation, the Secretary determines that the provisions of this subsection have been violated, he shall bring an action in any appropriate United States district court against such person."); *Scarborough v. Aegis Communications Group, Inc.*, 217 F.3d 840 (Table) (4th Cir. 2000) (concluding that "there is no private right of action under OSHA"); *Carter v. GardaWorld Sec. Servs.*, No. CV JKB-20-3700, 2021 WL 2018636, at *5 (D. Md. May 20, 2021) (dismissing OSHA claim because no private right of action); *see also Johnson v. Interstate Mgmt. Co., LLC*, 849 F.3d 1093, 1097 (D.C. Cir. 2017) (holding that, "[a]lthough Section 11(c) affords the Secretary of Labor a cause of action," it creates neither an express nor implied "private cause of action for retaliation claims").

Accordingly, the Motion will be granted as to Plaintiff's OSHA claim.

**D.    Fraudulent Inducement**

Defendant argues that Plaintiff has not properly pled a fraudulent inducement claim.  (ECF No. 20-1 at 9.)

"Under Maryland law, '[f]raud encompasses, among other things, theories of fraudulent misrepresentation, fraudulent concealment, and fraudulent inducement.'"  *Topline Solutions, Inc. v. Sandler Sys, Inc.*, No. ELH-09-3102, 2017 WL 1862445, at *32 (D. Md. May 8, 2017) (quoting *Sass v. Andrew*, 152 Md. App. 406, 432 (2003)).  In accordance with Rule 9(b), a plaintiff "must, at a minimum, describe the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Bourgeois v. Live Nation Entertainment Inc.*, 3 F. Supp. 3d 423, 435 (D. Md. 2014) (quoting *U.S. ex rel. Owens v. First Kuwaiti Gen'l Trading & Contracting Co.*, 612 F.3d 724, 731 (4th Cir. 2010)).  "Rule 9(b) is 'less strictly applied with respect to claims of fraud by concealment' or omission of material

20

facts, as opposed to affirmative misrepresentations, because 'an omission cannot be described in terms of the time, place, and contents of the misrepresentation or the identity of the person making the misrepresentation.'" *Hebbeler v. First Mariner Bank*, No. ELH-17-3641, 2018 WL 3818855, at *6 (D. Md. Aug. 10, 2018) (quoting *Shaw v. Brown & Williamson Tobacco Corp.*, 973 F. Supp. 539, 552 (D. Md. 1997)).

Under Maryland law, a claim for fraudulent inducement requires:

> . . . (1) that the representation made is false; (2) that its falsity was either known to the [defendant], or the misrepresentation was made with such a reckless indifference to truth as to be equivalent to actual knowledge; (3) that it was made for the purpose of defrauding the [plaintiff]; (4) that [the plaintiff] not only relied upon the misrepresentation, but had a right to rely upon it in the full belief of its truth, and that [the plaintiff] would not have done the thing from which the injury resulted had not such misrepresentation been made; and (5) that [the plaintiff] actually suffered damage directly resulting from such fraudulent misrepresentation.

*First Union Nat'l Bank v. Steele Software Sys. Corp.*, 154 Md. App. 97, 134 (2003).

Here, Plaintiff alleges that "Managers Von Grayson and Marcus told me that I would always receive 15 hours a week" at $16 an hour.  (ECF Nos. 1 at 2 and 5 at 6.)  While it is not entirely clear whether Plaintiff contends that these alleged assurances were false when made or with the required recklessness as to truth, Plaintiff additionally fails to allege that Defendant made the statement for the purpose of defrauding Plaintiff, that Plaintiff had a right to rely on it and that he would not have done the thing from which the injury resulted had Defendant not made such a misrepresentation.  Plaintiff omits to mention when such a statement was made and does not allege he relied on any such representation to accept the stocker job at Aldi (or to decline another offer of like or higher value).  For these reasons, the Motion will be granted as to Plaintiff's fraudulent inducement claim.

**IV.**     **<u>CONCLUSION</u>**

For the reasons set forth herein, by separate order, the Motion (ECF No. 20) will be GRANTED.

/S/

_____

Julie R. Rubin<br>United States District Judge

January 4, 2024

22